REVISED

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2026

Lyle W. Cayce
Clerk

No. 25-11253
CONSOLIDATED WITH
No. 25-11254

―――――――――――

IN RE NAOISE CONNOLLY RYAN; EMILY CHELANGAT BABU; JOSHUA MWAZO BABU; CATHERINE BERTHET; HUGUETTE DEBETS, *Et al.*,

*Petitioners.*

―――――――――――――――――――――――――

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 4:21-CR-5-1, 4:21-CR-5-1

―――――――――――――――――――――――――

ON PETITIONS FOR REHEARING

Before SOUTHWICK, DUNCAN, and ENGELHARDT, *Circuit Judges*.

PER CURIAM:

The petition for rehearing en banc by Petitioners is DENIED. No member of the panel or judge in regular active service requested that the court be polled on rehearing en banc in this case. (FED. R. APP. P. 35 and 5TH CIR. R. 35.) The petition for panel rehearing by Petitioners is DENIED. *See* 5TH CIR. R. 40. We withdraw our previous opinion, 171 F.4th 773, and substitute the following:

25-11253
c/w No. 25-11254

Following two tragic airplane crashes that killed hundreds, the Department of Justice investigated Boeing for concealing safety information related to the crashes. It then charged Boeing with conspiracy to defraud the United States. The Department later entered into a non-prosecution agreement (NPA) with Boeing on the condition that Boeing pay $1.1 billion in fines and undertake remedial actions. The district court granted the Department's motion to dismiss the prosecution.

Family members of the crash victims unsuccessfully challenged the NPA and the dismissal in the district court under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771 *et seq*. The families then sought mandamus relief in our court.

We agree with the district court that the Department did not violate the families' rights under the CVRA. Accordingly, we DENY the petitions for writ of mandamus.

I

In October 2018, Lion Air Flight 610 crashed shortly after takeoff in Indonesia, killing 189 passengers and crew. In March 2019, Ethiopian Airlines Flight 302 crashed shortly after takeoff in Ethiopia, killing 157 passengers and crew. Both planes were Boeing 737 MAX airliners. The crashes were caused by pilots' unfamiliarity with Boeing's changes to the 737 MAX's Maneuvering Characteristics Augmentation System (MCAS). *See In re Ryan*, 88 F.4th 614, 618 (5th Cir. 2023). In response to the crashes, the Department of Justice launched a two-year investigation into Boeing.

In February 2020, a representative of the Flight 302 crash victims' families contacted the Department, which told them that Boeing was not currently under criminal investigation. The Department later apologized for failing to meet and confer with the families, claiming it was caused by "a regrettable and inadvertent internal miscommunication."

2

25-11253
c/w No. 25-11254

In January 2021, the Department charged Boeing with conspiracy to defraud the United States under 18 U.S.C. § 371, alleging that two Boeing employees had intentionally misled the FAA regarding changes to the MCAS system. The same day, the Department filed a Deferred Prosecution Agreement (DPA) it had negotiated with Boeing, in which Boeing admitted responsibility for the acts charged. The district court approved the DPA a few weeks later.

In December 2021, victims' families moved to set aside the DPA under the CVRA. In February 2023, the district court denied their motion. It found that, although the Department had violated the CVRA by denying the families' right to confer prior to reaching an agreement with Boeing, *see* 18 U.S.C. § 3771(a), it had done so not out of bad faith but due to "legal error." *United States v. Boeing Co.*, 655 F. Supp. 3d 519, 534 (N.D. Tex. 2023). That error, the court explained, was the Department's mistaken belief that the crash victims were not "crime victims" under the CVRA. *Ibid.*; *see* 18 U.S.C. § 3771(e)(2)(A) (defining "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia"). The court also held it lacked authority to review or modify the terms of a DPA. *Boeing*, 655 F. Supp. 3d at 530–32.

The families then filed a mandamus petition in our court. *See* 18 U.S.C. § 3771(d)(3) ("If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus."). A panel held mandamus was premature. *See Ryan*, 88 F.4th at 627. It also noted that district courts "lack authority to exercise substantive review over DPAs." *Id.* at 621. The panel did not, however, appear to resolve whether courts have authority to set aside DPAs altogether. *See id.* at 629–30 (CLEMENT, J., concurring).

3

25-11253
c/w No. 25-11254

In May 2024, the Department notified the district court that Boeing had breached the DPA by "failing to design, implement, and enforce a compliance and ethics program to prevent and detect violations of the U.S. fraud laws throughout its operations."

In May 2025, the Department held a video call with the victims' families about its renewed case against Boeing. The Department told the families it was considering resolving the case through a motion to dismiss and a non-prosecution agreement (NPA). It explained that an NPA meant it would agree not to prosecute Boeing, which would "require the Department to move to dismiss the charge pending against Boeing." In exchange, Boeing would agree to "various undertakings, such as paying a penalty, improving compliance, etc." The Department would agree not to revive the case unless it determined that Boeing had breached the NPA.

The families had mixed opinions about the proposed NPA. In response to some concerns, the prosecution assured the families that their attorneys could "talk to [them] about the legal authority a judge has to deny the government's motion to dismiss." It also told the families that any NPA with Boeing would include a provision stating that if Boeing breached the NPA, "the Department could refile the charge and prosecute the case, notwithstanding the passage of time." Finally, the prosecution stated it would "support the victims' families right to be heard in front of Judge O'Connor" while he was considering whether to grant the motion to dismiss.

About two weeks later, the prosecution and Boeing signed an NPA in line with the one it had discussed with the families. The finalized NPA and its attachments contained numerous references to the earlier DPA. One of the NPA's provisions required Boeing to agree that if it breached the NPA, it could be prosecuted for conduct "not time-barred by the applicable statute of limitations on the date of the signing of this [NPA]."

The Department then filed a motion to dismiss that included the in-effect NPA. The families asked the district court to deny the motion, citing (1) their previous objections to the DPA, (2) the Department's alleged failure to meet and confer with them about the NPA, and (3) the NPA's alleged betrayal of the public interest. The district court granted the motion to dismiss, holding the Department had not "acted with bad faith" and had "given more than mere conclusory reasons for its dismissal." *United States v. Boeing Co.*, No. 4:21-CR-5, 2025 WL 3095958, at *5 (N.D. Tex. Nov. 6, 2025).

In response, the families filed two mandamus petitions in our court. The first reasserts their previous objections to the 2021 DPA. The second asks us to (1) set aside the 2025 NPA, and (2) reverse the district court's approval of its 2025 motion to dismiss. We consolidated the two petitions and heard oral argument.

## II

Under the CVRA, crime victims are afforded various rights, including rights to "confer with the attorney for the Government," to "be treated with fairness," and to "be informed in a timely manner of any plea bargain or deferred prosecution agreement." *See* 18 U.S.C. § 3771(a)(5), (8), (9). Families may assert these rights "in the district court in which a defendant is being prosecuted for the crime." 18 U.S.C. § 3771(d)(3). If the district court denies such a motion, "the movant may petition the court of appeals for a writ of mandamus." *Ibid.*

When reviewing mandamus petitions under the CVRA, "the court of appeals shall apply ordinary standards of appellate review." *Ibid.* This means "de novo review for legal conclusions, clear-error review for factual findings, and abuse-of-discretion review for discretionary judgments." *In re Doe*, 57 F.4th 667, 672–73 (9th Cir. 2023).

## III

### A

We first address the families' challenge to the 2021 DPA.

The families contend the Department's nondisclosure of its negotiations with Boeing violated their rights to "timely notice" of the DPA. *See* 18 U.S.C. § 3771(a). They also argue the district court "allow[ed] the illegally negotiated DPA to influence its [2025] dismissal decision." In particular, they contend the DPA's allegedly flawed financial penalty calculations made their way into the 2025 NPA. The Department and Boeing respond that these issues concerning the 2021 DPA are moot.[1] We agree.

Agreements not to prosecute are "contractual in nature, and are therefore interpreted in accordance with general principles of contract law." *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998). Under those principles, a third-party's challenge to a contract that no longer binds a contracting party is moot. *Bender v. Donoghue*, 70 F.2d 723, 724 (5th Cir. 1934). When Boeing violated the DPA, the agreement's express terms made Boeing "subject to prosecution for any federal criminal violation," thus relieving the Department of its obligations under the agreement. At that point, the agreement no longer bound the contracting parties and any challenge based on its terms became moot.

It is irrelevant that the 2025 NPA relied on the DPA's penalty calculations. Nothing in the record suggests the Department did so because it believed itself still bound by the DPA. As the government's brief explains,

---

[1] The families argue mootness was not raised by either party before the district court. Mootness is jurisdictional, however, and may be raised for the first time on appeal or, indeed, by the court *sua sponte*. *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 537 (1978).

25-11253
c/w No. 25-11254

the calculations were based on the statutory maximum fine the Department believed it could secure. Those calculations are not suspect merely because they appeared in a prior DPA that was negotiated without proper procedures.

In sum, the challenge to the 2021 DPA is moot.[2]

B

We turn to the families' challenge to the 2025 NPA.

1

The families argue the NPA should be set aside because the Department failed to "confer" with them and "treat[] [them] with fairness." *See* 18 U.S.C. § 3771(a)(5), (8). Specifically, the families assert the Department "misled" them during the May 2025 video call in two ways. *See Doe 1 v. United States*, 359 F. Supp. 3d 1201, 1219 (S.D. Fla. 2019) ("When the Government gives information to victims, it cannot be misleading.").

First, the families say the Department deceived them about the timing of the NPA. They argue the Department falsely led[3] them to believe it would follow the supposedly "normal sequence" of entering an NPA only after the court ruled on its motion to dismiss. Second, they argue the Department misinformed them that it could refile charges if Boeing breached the NPA. To the contrary, the families claim the NPA failed to extend the statute of limitations such that all of Boeing's misconduct is now time-barred.

_____

[2] As a result, we need not address the parties' arguments regarding whether courts have the power to set aside DPAs.

[3] They argue the Department did this by stating that the families could talk to their lawyers "about the legal authority a judge has to deny the government's motion to dismiss" and asserted that it would "support the . . . family's right to be heard in front of Judge O'Connor" while he was considering the motion to dismiss.

7

25-11253
c/w No. 25-11254

Having carefully considered the families' arguments, we are not persuaded that the Department violated their rights under the CVRA.

The families were entitled to a "reasonable right to confer" with the prosecution. 18 U.S.C. § 3771(a)(5); *see, e.g.*, *In re Dean*, 527 F.3d 391, 394–95 (5th Cir. 2008) (per curiam) (CVRA affords victims the right to "communicate meaningfully with the government, personally or through counsel"). They were afforded this right when the prosecution met with them via video call in May 2025. During that call, the prosecution "compare[d] [its] views" with those of the families, thereby conferring with them as the CVRA requires.[4] Even assuming the prosecution could have been clearer about its intention to enter an NPA before the district court ruled on a motion to dismiss, the families cite no authority for the proposition that this means the Department failed to "confer" with them as the CVRA demands. *See* 18 U.S.C. § 3771(a)(5).

Nor does the record show that the prosecution failed to treat the families with the "fairness" required by the CVRA. *Id.* § 3771(a)(8). In particular, the record does not support the families' assertion that they were "misled" as to the NPA's timing. During conferral, the prosecution was clear that (1) it was considering an NPA (as the families do not dispute), (2) NPAs impose obligations on defendants "in exchange for [the government] not prosecuting," and (3) entering an NPA would require moving to dismiss. The prosecution never suggested it would wait for a dismissal before entering the NPA. To the contrary, it suggested the

---

[4] This is the very definition of "confer" the families cite in their petitions. *See Confer*, Merriam Webster's Collegiate Dictionary 260 (11th ed. 2006) ("to compare views or take counsel: consult"); *see also In re Presto*, 358 B.R. 290, 293 (Bankr. S.D. Tex. 2006) (conferral means "counsel must 'compare views' and . . . attempt to resolve their differing views before coming to court"); *Confer*, Black's Law Dictionary (10th ed. 2014) ("To hold a conference; to consult with one another").

opposite—namely, that "if the Department entered an NPA with Boeing, that would require the Department to move to dismiss the charge."[5]

The prosecution was also not misleading when it promised it could renew charges "notwithstanding the passage of time." Contrary to the families' argument, the NPA allows future charges against Boeing if Boeing violates the NPA. The NPA expressly permits prosecution for conduct that is "not time-barred by the applicable statute of limitations *on the date of the signing of this Agreement*." The NPA was signed in May 2025. As of that date, the pending section 371 charge was not time-barred because the prosecution tolled limitations by filing an information in 2021. *See United States v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990); *Miller v. U.S. ex rel. Hunt*, 181 F.2d 363, 364 (5th Cir. 1950).[6]

In sum, the district court correctly concluded that the Department did not violate the CVRA by failing to confer with the families or by misleading them about the NPA.[7]

---

[5] Moreover, the families cite no authority supporting the argument that the "normal" sequence is to wait for dismissal before entering an NPA. While that may happen in some cases, the Department cites cases in which a different sequence occurred. *See In re Wild*, 994 F.3d 1244, 1247–48 (11th Cir. 2021) (en banc) (promise not to prosecute was made before any charges were filed, making dismissal unnecessary); *United States v. Bird*, 709 F.2d 388, 389–90 (5th Cir. 1983) (prosecutors promised to dismiss and not to prosecute before dismissal occurred).

[6] The families argue that the Department confuses two different kinds of "tolling." They contend an information "tolls" only in the sense of suspending limitations while charges are pending; it does not permanently "stop the clock." That may be true, but it is irrelevant to the question of whether the Department can refile charges if Boeing breaches the NPA. The section 371 charge was not time-barred *when the NPA was executed* because the charges against Boeing were still pending at that time.

[7] As a result, we need not address the parties' arguments regarding district courts' power to set aside NPAs.

2

The families also argue that the district court's Rule 48 dismissal should be reversed because it is contrary to the public interest. *See* Fed. R. Crim. P. 48(a) ("The government may, with leave of court, dismiss an indictment, information, or complaint."). We cannot entertain this argument, however, because we lack jurisdiction under the CVRA to substantively review a district court's decision to grant a motion dismissing a criminal prosecution.

The CVRA provides that victims' rights "shall be asserted in the district court," and "[i]f the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." 18 U.S.C. § 3771(d)(3). Because the CVRA mentions mandamus petitions only in the context of protecting the rights of crime victims, it confers no jurisdiction to review the underlying merits of a Rule 48 dismissal. *See In re J.H.*, 138 F.4th 1347, 1349 (9th Cir. 2025) (the mandamus procedure "does not permit [CVRA] victims to challenge—and does not empower a court of appeals to address—matters other than a district court's denial of the rights enumerated in that statute"); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (private citizens generally lack "a judicially cognizable interest in the prosecution or nonprosecution of another"). For the same reason, we lack jurisdiction to consider whether the district court relied on incorrect calculations, as the families claim, when granting the Rule 48(a) dismissal.

The families respond that by applying the "wrong legal standard," a district court fails to treat crime victims' families "with fairness" as the CVRA requires, making the underlying dismissal reviewable. *See* 18 U.S.C. § 3771(a)(8). We disagree. We decline to read into the CVRA an unlimited right for victims to appeal the dismissal of criminal prosecutions. Such a sweeping right would be inconsistent with the basic proposition that

nonparties lack a "judicially cognizable interest" in the prosecution of another. *See Linda R.S.*, 410 U.S. at 619.

In sum, we lack jurisdiction under the CVRA to perform a substantive review of the district court's Rule 48 dismissal.

## IV

The petitions for writ of mandamus are DENIED.